## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **FLOYD D. HALDERMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 10-1349-JWL** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.       Background

Plaintiff applied for both DIB and SSI in January 2002, alleging disability beginning October 15, 2001. (R. 51-58, 1107-10). Plaintiff's applications were denied after proceedings before the Commissioner, and in due course Plaintiff sought review of

the Commissioner's decision with this court in May 2004.  Halderman v. Barnhart, No.

04-1152-MLB (D. Kan. May 11, 2004).  In a Report and Recommendation adopted by the

district court, Magistrate Judge Reid found that the Commissioner both failed to consider

the medical opinion of a treating physician, Dr. O'Connor, and found without proper

citation to admissible authority that Plaintiff's impairments "could be drastically lessened

if he stopped smoking and abusing alcohol."  Halderman, No. 04-1152-MLB, slip op. at

10, 14-15 (D. Kan. Nov. 9, 2005).  Therefore, the Commissioner's decision was reversed,

and the case was remanded for further proceedings to properly consider the opinion of Dr.

O'Connor, and to revisit the issue of smoking and alcohol abuse cessation.  Id. 10-11, 16.[1]

        While judicial review was pending, Plaintiff submitted another set of applications

to the Commissioner, and the agency began new proceedings.  (R. 461-62, 471-647, 675-

1090).  On remand, the Administrative Law Judge (ALJ), William H. Rima, consolidated

the proceedings on the new applications with the proceedings on remand, and held

another hearing.  (R. 1115-43).  On February 6, 2007 Plaintiff appeared with counsel and

testified at the hearing.  Id.  After the hearing, the ALJ posed an interrogatory to a

medical expert, and included the expert's response in the record.  (R. 655-74, 1091-1106).

        ALJ Rima issued his decision on June 9, 2008 finding that Plaintiff has the

residual functional capacity (RFC) for a range of medium work, and that although he is

unable to perform his past relevant work as a construction worker, there are a significant

_____

        [1]A copy of the court's decision in the prior case is in the administrative record here
(R. 440-56), and all further citation to that decision will be to the administrative record.

number of jobs in the economy that he is able to perform.  (R. 427-39).  Therefore, the

ALJ found that Plaintiff is not disabled within the meaning of the Act, and denied his

applications.  (R. 439).  On August 8, 2008, Plaintiff appealed the decision after remand

to the Appeals Council, and two years later, on August 9, 2010, after the Council

considered Plaintiff's arguments, it declined to assume jurisdiction.  (R. 418-23).

Therefore, the ALJ's decision is the final decision of the Commissioner after remand.  (R.

419); 20 C.F.R. §§ 404.984, 416.1484.  Plaintiff now seeks judicial review of that

decision.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi,

422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the Plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months.  Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2008); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses claimant's residual functional capacity (hereinafter RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show jobs existing in the

economy which are within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court discerns three claims of error in the four-page "Argument" section of Plaintiff's brief.  (Pl. Br. 30-34).  (1) In the decision after remand the ALJ once again disregarded the treating source opinion of Dr. O'Connor, while in the process ignoring the mandate presented in the district court's remand order;[2] id. at 31; (2) the ALJ erroneously favored the opinion of a non-examining medical expert, Dr. Winkler, over that of Dr. O'Connor; id. at 32; and (3) the ALJ further ignored the district court's remand order by "repeat[ing] his unsupported speculation that Plaintiff's severe medical impairments would resolve or be dramatically improved were Plaintiff to cease alcohol use and smoking."  Id. at 32-33.  The Commissioner argues that the ALJ properly considered and weighed the medical opinions, including the treating source[3] opinions of Dr. Massey and Dr. O'Connor; and the non-examining source opinion of Dr. Winkler-- rendered in response to interrogatories and after reviewing the record medical evidence.

---

[2]In the earlier proceedings, Judge Belot adopted Judge Reid's Recommendation and Report as his own.  (R. 440).  Consequently, the court refers to and cites that Recommendation and Report as the district court's remand order.

[3]The regulations define three types of "acceptable medical sources:"
"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.
"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

(Comm'r Br. 12-17).  Moreover, while the Commissioner admits the ALJ stated that nicotine is generally known as a pain stimulant, he argues that in the decision the ALJ did not make any remark or finding that Plaintiff's condition would improve or resolve if Plaintiff stopped drinking or smoking.  The court finds no error in the decision of the Commissioner after remand, and begins its analysis with Plaintiff's claim that in the decision after remand the ALJ repeated his speculation that Plaintiff's condition would resolve or dramatically improve if he stopped alcohol use or smoking.

## III.    Cessation of Smoking or Alcohol Use

In his first decision, ALJ Rima found that "claimant's noncompliance [(with his physicians' advice to stop smoking and to stop using alcohol)] accounts for many of his problems, and there is not doubt from the record that the claimant's impairments could be drastically lessened if he stopped smoking and abusing alcohol."  (R. 19).  Plaintiff complained about that finding to the district court in the earlier case.  (R. 455).  The Magistrate Judge addressed the issue, found that the ALJ did not cite any authority for the assertion that Plaintiff's impairments would be drastically lessened if he stopped smoking and abusing alcohol, and instructed the ALJ to "revisit his finding on this issue" and to cite to medical authority "before making such a finding" on remand.  (R. 455-56).

Here, Plaintiff argues that the ALJ "repeated his unsupported speculation that Plaintiff's severe medical impairments would resolve or be dramatically improved were Plaintiff to cease alcohol use and smoking."  (Pl. Br. 32) (without citation to the record). He acknowledges that smoking and alcohol use could have an adverse effect on his

impairments--COPD (chronic obstructive pulmonary disease), hepatitis C, or a substance abuse disorder--and argues that in the decision after remand "the ALJ has not relented in his position," as it relates to Plaintiff's other impairments, and "has gone further [sic] in his second decision to assert that Plaintiff's <u>pain symptoms</u> are the direct result of his <u>nicotine use</u>, either by smoking or [by] use of anti-smoking nicotine patches, and the ALJ has now predicted to Plaintiff that he can actually expect his disabling pain symptoms to resolve in less than two years should he simply avoid use of nicotine." (Pl. Br. 33) (without citation to the record) (emphases in Plaintiff's brief). Plaintiff argues that the ALJ did not cite medical authority to support this assertion, and that the ALJ thereby ignored the magistrate judge's remand order. <u>Id.</u>

The Commissioner argues that "the ALJ made no such remarks in his decision," but that he merely noted in the most recent hearing that nicotine is generally known as a pain stimulant, commended Plaintiff on stopping smoking, asked whether Plaintiff had noticed any improvement in pain symptoms since stopping the use of nicotine, and commented that it might take time for Plaintiff's body to adjust to not having nicotine. (Comm'r Br. 10-11). He argues that there was nothing improper about the ALJ's hearing statements, and even if they were error, it was harmless because substantial evidence supports the credibility finding, and the statements made at the hearing did not affect the decision. <u>Id.</u> at 11.

The court agrees with the Commissioner. The ALJ simply made no reference in the decision that can be interpreted to imply that Plaintiff's pain symptoms have been

amplified by tobacco or alcohol use, or that his impairments or symptoms will be reduced

if he stops using alcohol, nicotine, or tobacco.  Plaintiff points to nothing in the decision

to support his argument.  But, his argument states without citation that the ALJ repeated

the error from his earlier decision in the decision after remand, and that the ALJ went

farther in the decision after remand by stating that Plaintiff's pain resulted from nicotine

use and that the pain would resolve in two years after Plaintiff stopped using nicotine.

(Pl. Br. 33) ("ALJ has gone further [sic] in his second decision").  Plaintiff did not

specifically cite the ALJ's hearing statements, did not state they were made at the hearing,

and did not argue that although they were made at the hearing, they infected the decision

after remand.  Rather, he argued that "[i]n his second decision, the ALJ has not relented

in his position," and that "the ALJ has gone further [sic] in his second decision" to make

the statements complained of.  (Pl. Br. 33.  Therefore, it appears that Plaintiff was seeking

to mislead the court that the allegedly erroneous statements were made in the decision

after remand.  In such circumstances, the court would only realize that Plaintiff was

relying on the ALJ's statements at the hearing rather than on a finding in the decision if

the Commissioner pointed that fact out, if the court looked in the decision for those

statements and did not find them, or if the court noticed the hearing statements while

reviewing the hearing transcript and made the connection to Plaintiff's argument for

itself.  Counsel is cautioned to be scrupulously careful in the future in his arguments, and

in his citations regarding the Commissioner's decisions.

At the hearing the ALJ questioned Plaintiff regarding Plaintiff's allegation that he stopped smoking in September, 2006 with the aid of nicotine patches.  (R. 1137-41).  As the Commissioner points out, the ALJ stated to Plaintiff, "The point is, nicotine is a stimulant whether you get it from cigarettes or you get it from patches, nicotine is a pain stimulant, it causes pain to be greater, it aggravates the pain."  (R. 1139).  After some further discussion, Plaintiff stated he was proud that he had had no cigarettes or patches since November, 2006, and the ALJ responded, "well you should be.  Have you noticed a decrease in pain since that time?"  (R. 1140).  Thereafter, the discussion concluded with this exchange:

> Q [ALJ]    Yeah.  You understand, it's only been a few months since you stopped nicotine.  It's going to take a year or two, to two years for your body to adjust, do you understand?
>
> A    Well they never told me that.
>
> Q    It will.  So hopefully the[re]'ll be a decrease in pain.

(R. 1141).  The record is clear, at the hearing the ALJ stated that nicotine is a pain stimulant, and that pain will slowly decrease after an individual stops ingesting nicotine, reaching maximum benefit in a year to two years.  The ALJ did not cite any medical authority for these assertions, and therefore, the court will assume for purposes of this discussion that the ALJ's assertions are factually erroneous.  However, in the decision, the ALJ made no such assertions and no findings of facts which equate to those assertions, and Plaintiff points to nothing in the decision suggesting such findings.

The ALJ found Plaintiff's allegations of pain not credible (R. 436), and Plaintiff does not claim error in that finding.  The ALJ provided reasons for his credibility finding, including (1) that medical records showed that when Plaintiff reported pain from any particular impairment, it was addressed and Plaintiff would later report that there was adequate pain control; (2) that pain increased when Plaintiff missed or was late taking his pain medication; (3) that the alleged severity of Plaintiff's pain is not supported by his description of his daily activities; and, (4) that Plaintiff continues to be active.  (R. 437).  Nowhere in the decision is there any hint that the credibility finding was based upon the erroneous belief that nicotine is a pain stimulant, or that cessation of smoking or alcohol abuse would result in an improvement in symptoms.

An administrative agency must give reasons for its decision.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir. 1988)).  And, the decision will be evaluated based solely on the reasons stated therein.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner; Frantz v. Astrue, 509 F.3d 1299, 1300 (10th Cir. 2007); Hackett, 395 F.3d at 1172; White, 287 F.3d at 905; and it may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005).  The court's review is limited to consideration of the "final decision of the Commissioner."  42 U.S.C. § 405(g) (sentence one).  Therefore, the court is without authority to police all erroneous statements made by an ALJ, unless it is

11

shown that the erroneous statements affected the decision.  Plaintiff has not done so here,

and consequently has not shown error, much less prejudicial error, in the ALJ's

credibility determination.

## IV.    Weight Accorded Medical Opinions

Without citation to record evidence or to the ALJ's decision in this case, and citing

to legal authority only for the standard to be applied generally in evaluating medical

opinions,[4] Plaintiff claims that the ALJ once again disregarded Dr. O'Connor's treating

source opinion, "failed and refused to cite proper evidence to justify his disregard of the

expert medical opinion of Dr. O'Connor," and erroneously "favor[ed] the findings of a

non-examining medical consultant [(Dr. Winkler)] over that of a treating physician."  (Pl.

Br. 31, 32).  The Commissioner argues that the ALJ properly gave substantial weight to

the opinion of Plaintiff's treating neurologist, Dr. Massey and agreed with the similar

opinion of Dr. Winkler.  (Comm'r Br. 12-13).  He argues that the ALJ did not ignore Dr.

O'Connor's opinion, but properly considered it and discounted it.  Id., at 13-14.  He then

explains how, in his view, the record evidence supports the ALJ's evaluation of the

medical opinions.  Id. at 15-17.

### A.    Legal Standard to Weigh Medical Opinions

---

[4]The court notes that in the almost four pages of the "Argument" section of his
brief, Plaintiff provides no pinpoint citation to the record, to the decision after remand, or
to the court's prior remand order, and his only citation to legal authority is to the standard
for evaluating medical opinions as discussed above.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2011).  A physician who has treated a patient frequently over an extended period of time (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion."  Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record.  Robinson, 366 F.3d at 1084; Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by

13

medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not

inconsistent with the other substantial evidence in [claimant's] case record, [the

Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(d)(2),

416.927(d)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15

(Supp. 2011) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating

source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)

(citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by

medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting

SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is

also consistent with other substantial evidence in the record. Id. "[I]f the opinion is

deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not

end. Id. A treating source opinion is "still entitled to deference and must be weighed

using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors

are: (1) length of treatment relationship and frequency of examination; (2) the nature and

extent of the treatment relationship, including the treatment provided and the kind of

examination or testing performed; (3) the degree to which the physician's opinion is

supported by relevant evidence; (4) consistency between the opinion and the record as a

whole; (5) whether or not the physician is a specialist in the area upon which an opinion

is rendered; and (6) other factors brought to the ALJ's attention which tend to support or

contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id.  (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

## B.     The District Court's Remand Order

When the ALJ's first decision was before the court on judicial review, Plaintiff claimed error because the ALJ "failed to consider the opinions of Dr. O'Connor."  (R. 449).  The court recognized that the ALJ referred to Dr. O'Connor only once in a very brief summary of Dr. O'Connor's Physical RFC Questionnaire, and failed to mention or discuss Dr. O'Connor's answers to questions 7, 13, and 14 on the questionnaire--relating to sedation, pain, and "low stress" jobs.  Id. at 449-50 (citing (R. 16, 410)).  The court noted that, "[a]lthough there may be legitimate reasons for discounting the above opinions of Dr. O'Connor, the ALJ has clearly erred by ignoring these opinions."  Id. at 450-51.  The court explained that on remand, "[t]he ALJ must consider these opinions, and if they are not adopted, the ALJ must explain why they were not adopted."  Id. at 451.

## C.     The ALJ's Evaluation of the Medical Opinions

The ALJ considered the Physical RFC Questionnaire completed by Dr. Massey, Plaintiff's treating neurologist at the VA Medical Center, and accorded it "controlling and/or substantial weight," explaining that it was consistent, and based upon medically acceptable diagnostic techniques, trained observation, and an extensive treatment history. (R. 436). He agreed with the Medical Source Statement of Ability to Do Work-Related Activities completed by the medical expert, Dr. Winkler. (R. 431). The ALJ considered the medical opinions of the state agency consultants, but discounted them because later evidence indicated that Plaintiff was more limited. (R. 431).

The ALJ also considered and summarized Dr. O'Connor's medical opinion. (R. 433) (citing Exs. 13F, 14F (R. 395-99)). He stated his reasons for discounting Dr. O'Connor's opinion, explaining: (1) that Dr. O'Connor indicated her treatment was not as thorough as that provided by the VA Medical Center and that she depended on the VA treatment notes; (2) that no other medical source concluded Plaintiff was disabled; that no objective medical evidence supported Dr. O'Connor's opinions (3) that Plaintiff is incapable of low stress jobs, or (4) that facial pain frequently interfered with attention or concentration; (5) that Dr. Massey stated Plaintiff's trigeminal neuralgia pain seemed well controlled by Neurontin without significant side effects; and (6) that Dr. Massey stated Plaintiff was able to tolerate a moderate amount of stress. (R. 435).

### D.   Analysis

It cannot be seriously argued that the ALJ ignored Dr. O'Connor's opinions in the decision after remand. The ALJ devoted significant discussion to summarizing Dr.

O'Connor's opinions, and specifically mentioned the opinions that the court found he had completely ignored in the first decision:

> Dr. O'Connor further stated that the claimant was treated with Tegretol, Gabapentin, Nortriptyline, and Tylenol 3, and that all these medications could cause sedation.  She opined that the claimant was incapable of even "low stress" jobs due to sedation from medication, and that the claimant's pain frequently interfered with his attention and concentration.

(R. 433).  Moreover, the ALJ presented six reasons for discounting the opinions.  (R. 435).  Plaintiff's brief attacks only one of those reasons--number four.  Plaintiff cites the court's remand order for the proposition that Dr. Massey's opinion (that Plaintiff's pain is well-controlled by Neurontin without significant side effects) "does not necessarily contradict that of Dr. O'Connor [because] Dr. Massey only noted one of Plaintiff's medications in his findings and Dr. O'Connor addressed her findings to a more complete list of required medications."  (Pl. Br. 31) (emphasis added).

This argument fails for several reasons.  First, and foremost, Dr. Massey's opinion that Neurontin does not produce significant side effects in Plaintiff, when considered in conjunction with his opinion that Plaintiff is able to tolerate moderate stress, necessarily contradicts Dr. O'Connor's opinion that Plaintiff cannot perform "low stress" jobs due to sedation from medication.  Both opinions cannot be credited.  Moreover, the Commissioner points to evidence that after Plaintiff's amended onset date, December 31, 2004, Plaintiff no longer took any of the medications listed by Dr. O'Conner other than gabapentin, the generic form of Neurontin.  (Comm'r Br. 15-16).  The court's review of the evidence supports the Commissioner's assertion, and Plaintiff did not file a reply brief

17

responding to it.  Further, Dr. O'Connor's statement that Tegretol, gabapentin, Nortriptyline, and Tylenol #3 "all <u>can</u> cause sedation," merely states a possible side effect of the listed medications, and says nothing regarding which, if any of them, actually caused sedation in Plaintiff.  (R. 396) (emphasis added).

Moreover, although the court's remand order noted that "Dr. Massey's report does not, <u>on its face</u>, contradict the report of Dr. O'Connor" on the issue of sedation as a result of medication side effects (R. 451) (emphasis added), it also recognized that "there may be legitimate reasons for discounting" Dr. O'Connor's opinion.  (R. 450).  In the decision after remand, the ALJ gave six legitimate reasons to discount Dr. O'Connor's opinion. (R. 435).  And, two of those reasons go beyond the face of Dr. Massey's report and explain that Dr. Massey found both that Plaintiff's trigeminal neuralgia pain was well-controlled by Neurontin without significant side effects, and that Plaintiff is able to tolerate moderate stress.  Id.  Further, Dr. Massey is a neurologist who treated Plaintiff at the VA Medical Center, Dr. Massey's opinion relates to an area within the scope of his specialty, and the ALJ also discounted Dr. O'Connor's opinion because Dr. O'Connor depended on the records of the VA Medical Center which had provided more thorough treatment of Plaintiff.

In his argument regarding the allegedly disabling side effects of his medications, Plaintiff makes an oblique attack on Dr. Winkler's findings, arguing that they "do not bear on the issue of Plaintiff's medications and their side effects," and that they "are open to some interpretation" because Dr. Winkler "acknowledged that Plaintiff's COPD

'might' be more severe than she [(Dr. Winkler)] can determine from the record, resulting in greater limitations than noted by her."  (Pl. Br. 31).  Frankly, the court is at a loss to see how these arguments relate to the issue of the allegedly disabling side effects of Plaintiff's medications.  As Plaintiff argues, Dr. Winkler's findings do not bear on that issue.  However, with regard to that issue, the ALJ relied upon the opinion of Dr. Massey to discount Dr. O'Connor's opinion, and as discussed above the ALJ's finding is supported by substantial evidence.  Moreover, Dr. Winkler's opinion does support reason number two given by Dr. Massey to discount Dr. O'Connor's opinion.  This is so, because Dr. Winkler is one of the "other medical source[s]" who did not conclude that Plaintiff is disabled.  (R. 435).

With regard to Plaintiff's argument that Dr. Winkler "acknowledged that Plaintiff's COPD 'might' be more severe than she can determine from the record, resulting in greater limitations than noted by her" (Pl. Br. 31), the court does not read Dr. Winkler's opinion so broadly as does Plaintiff.  Question number seven in Dr. Winkler's interrogatory asked what Dr. Winkler found to be Plaintiff's medically determinable impairments based on the medical evidence, and Dr. Winkler listed eight such impairments:  alcohol abuse, polycythemia, headaches, hepatitis C, trigeminal neuralgia, mild degenerative arthritis of the cervical spine, bilateral hearing loss, and possible depression.  (R. 1092).  Question number eight asked, "Are there any conflicts in the medical evidence of record that affected your opinion?  If so, please state how you resolved these conflicts."  (R. 1092).  Dr. Winkler answered the question, "Although

19

abnormal CXR [(chest x-ray)] (p8 [(R. 251)]) suggesting COPD, no PFTs [(pulmonary function tests)] in records - COPD may be severe in light of polycythemia (severe COPD may <u>cause</u> polycythemia)." (R. 1092) (underline in original). Contrary to Plaintiff's understanding, Dr. Winkler did not suggest that Plaintiff's COPD might result in greater limitations than opined in Dr. Winkler's Medical Source Statement. Rather, she noted there was medical evidence suggesting COPD even though no pulmonary function tests had been performed. Consequently, she suggested that Plaintiff may also have severe COPD in light of the clear medical evidence of polycythemia and the fact that polycythemia might be caused by severe COPD. She then completed a Medical Source Statement providing her opinion of Plaintiff's functional limitations beginning on December 31, 2004 in light of her review of the medical evidence. (R.1092-98). Her opinion regarding functional limitations was based upon her review of the medical records, including the possibility the Plaintiff's COPD may be severe enough to have caused polycythemia. None of Plaintiff's arguments regarding Dr. Winkler's opinion suggests that the side effects of Plaintiff's medications are disabling, or even that the ALJ should not have accorded weight to Dr. Winkler's opinion.

In the decision after remand, the ALJ did precisely as he was directed by the remand order, he "consider[ed Dr. O'Connor's] opinions," and because he decided not to adopt them, he "explain[ed] why they were not adopted." (R. 451). Contrary to Plaintiff's allegations of error, the ALJ did not ignore or disregard Dr. O'Connor's opinions, and did not ignore the mandate of the district court.

20

For his final claim of error, Plaintiff argues, "Even if one were to consider the opinions of Dr. O'Connor and Dr. Winkler to be at odds, the decision of the ALJ to favor the findings of a non-examining medical consultant [(Dr. Winkler)] over that [sic] of a treating physician [(Dr. O'Connor)] is contrary to the Commissioner's own rules and the precedents of the Tenth Circuit." (Pl. Br. 32). In the circumstances presented in this case, the court does not agree.

As Plaintiff argues, and as the court noted in the legal standard cited above, the law provides that in appropriate circumstances a treating source opinion might be given controlling weight; that a treating source opinion should generally be given more weight than a non-examining source opinion; that an ALJ must give specific, legitimate reasons for discounting a treating source opinion; and that the rationale given in the decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source medical opinion and the reasons for that weight." Watkins, 350 F.3d at 1300-01; see also SSR 96-2p.

Plaintiff notes that Dr. O'Connor is a treating physician and that Dr. Winkler is a non-examining physician, and argues that it is therefore error to accord greater weight to the opinion of Dr. Winkler. However, Plaintiff ignores that Dr. Massey is also a treating physician, that the ALJ accorded Dr. Massey's opinion "controlling and/or substantial weight," and that (as discussed above) the ALJ provided six reasons for discounting Dr. O'Connor's opinion and according greater weight to Dr. Massey's treating source opinion. In these circumstances, the ALJ noted that he also "agrees with" the opinion of

Dr. Winkler.  (R. 431).  Except for the arguments previously addressed and rejected by the court, Plaintiff points to nothing in Dr. Winkler's opinion which is erroneous or unsupported.  The ALJ complied with the standard for weighing medical opinions, he gave specific reasons for discounting Dr. O'Connor's opinion, those reasons are legitimate, are supported by substantial evidence in the record, and are sufficiently specific to make clear to the court the weight the ALJ accorded Dr. O'Connor's opinion, and the reasons for that weight.  Plaintiff has shown no error in the decision after remand.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 25th day of October 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**